## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br><br>                 **Plaintiff,** <br><br>       **v.** <br><br> LADISLAV "LARRY" SCHVACHO, <br><br>          **Defendant.** | 1:12-CV-2557-WSD |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter is before the Court following a bench trial held from November 18 to 19, 2013, on the Securities and Exchange Commission's ("Plaintiff" or "SEC") claims against Ladislav "Larry" Schvacho ("Schvacho" or "Defendant").

# I.   FINDINGS OF FACT[1]

### A.   Nature of the Action

This is a civil enforcement action brought by the SEC against Schvacho alleging Schvacho engaged in trading of the stock of Comsys IT Partners, Inc. ("Comsys IT") (formerly NASDAQ: CITP) based on material, nonpublic information about the acquisition of Comsys IT in violation of Sections 10(b) and 14(e) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rules 10b-5 and 14e-3.  The SEC alleges the inside information was revealed to Schvacho by Larry L. Enterline ("Enterline"), then-CEO of Comsys IT.  Enterline is a long-time close personal friend and business associate of Schvacho.  The SEC alleges that Schvacho misappropriated material, nonpublic information from Enterline and used it to trade in Comsys IT stock during the period (the "Period") between November 9, 2009, and February 2, 2010, the date on which Comsys IT publically announced that it would be acquired by a competitor, Manpower, Inc. ("Manpower") (NYSE: MAN).

---

[1] Having observed the testimony and demeanor of the witnesses for each party, the Court has weighed all the evidence in reaching its Findings of Fact and has weighed the credibility of each of the witnesses.  Conflicts in the evidence were resolved based on consideration of the evidence admitted at trial, and the Court's determination of the credibility of witnesses.

The SEC seeks relief against Schvacho in the form of a permanent injunction enjoining Schvacho from violating Sections 10(b) and 14(e) of the Exchange Act, disgorgement of ill-gotten gains in the amount of $512,667.86, prejudgment interest, and civil monetary penalties pursuant to Sections 21(d)(3) and 21A of the Exchange Act.

B.    <u>Schvacho's Personal History</u>

Schvacho was born in Slovakia, and immigrated to the United States in 1966. He graduated from Georgia Tech in 1972 with a bachelor's degree in electrical engineering and received a graduate degree in 1974 in industrial management, also from Georgia Tech.  From approximately 1977 until 1987, Schvacho worked for Reliance Electric Company ("Reliance") in its Atlanta office.  In 1991, Schvacho began working for Scientific Atlanta as a staff engineer.  Schvacho remained employed by Scientific Atlanta through its acquisition by Cisco Systems ("Cisco") in 2005.  From 2001 until his retirement in 2009, Schvacho's annual compensation from his employer ranged from approximately $100,000 per year to $200,000 per year.  Schvacho retired from Cisco on September 29, 2009, and received a retirement package.  Schvacho reported $386,704 in wages from Cisco on his 2009 tax return.

C.    <u>The Friendship Between Schvacho and Enterline</u>

Schvacho and Enterline first met when they both worked for Reliance in the early 1980s.  Schvacho reconnected with Enterline when Schvacho began working at Scientific Atlanta in 1991, when he discovered that Enterline also was employed there.  Beginning in 1991, Schvacho and Enterline became personal friends.  The two would meet socially, approximately once a week, usually on Fridays, when Enterline was in Atlanta.  At some point prior to 2009, Enterline named Schvacho executor of Enterline's estate in the event of his death.

Schvacho and Enterline invested in a company called Strategic Management Incorporated ("SMI"), which Enterline and a partner organized.  SMI operated similar to a private holding company, by acquiring various assets, including operating businesses, real estate, and public company investments.  Schvacho became a shareholder in SMI sometime in the 1990s when SMI acquired a technology business, Millennium Technology Associates, owned by Schvacho.  Enterline was the majority shareholder of SMI and ran the company.  Enterline and often discussed SMI's investments, strategy, and performance.  Schvacho remained a shareholder and board member of SMI until its dissolution on December 31, 2010.  Schvacho received $450,000 in the liquidation of SMI, $252,658.00 of which he received in 2009.

D.     Enterline Becomes Chief Executive Officer of Comsys

In December 2000, Enterline became chief executive officer of a staffing company called Personnel Group of America, Inc. ("PGA").  He moved to Charlotte, North Carolina, where PGA was headquartered.  On August 5, 2003, PGA changed its name to Venturi Partners, Inc. ("Venturi").  On July 20, 2004, it was announced that Venturi agreed to merge with Comsys Holding, Inc. in a stock-for-stock transaction.  Comsys Holding was the surviving entity and the combined company was renamed Comsys IT.  (Comsys IT, together with its predecessor companies PGA and Venturi, are hereafter referred to as "Comsys.") On September 30, 2004, Enterline was replaced as CEO of Comsys, but remained on its board of directors.

On February 2, 2006, Comsys re-hired Enterline as CEO, and Enterline moved to Houston, Texas, where Comsys was headquartered following the merger. Enterline maintained a residence in Atlanta, and he and Schvacho met socially when Enterline was in Atlanta.  Schvacho and Enterline also were in telephone contact, and, on average, Schvacho and Enterline spoke to each other two or three times a week.

E.     Enterline's Efforts to Maintain and Protect Inside Information

During the 2009 to 2010 time period and earlier, Comsys had an insider

trading policy (the "Policy").  Enterline was aware of the Policy and testified he was

careful at all times to comply with it.  Enterline understood the policy stated that

"[u]nder United States securities laws it is a crime to pass material, nonpublic

information about [Comsys] to others who use it for personal profit if the

information was obtained in the course of one's employment and disclosure violates

a duty of confidentiality or otherwise to the employer."  Enterline understood the

policy also prohibited directors, officers, or employees of Comsys from passing on

to others any material, nonpublic information.  Enterline understood that news of a

pending or proposed merger would constitute material, nonpublic information.

Enterline had a standard practice for answering questions when asked how

Comsys was doing.  His practice was to refer to public statements reported in

Comsys' press releases or SEC filings.  He also might give a cryptic answer of

"fine."  Enterline was also careful to avoid conducting telephone conversations

involving Comsys business in the presence of outsiders.  For instance, Enterline

testified that he never placed telephone calls involving Comsys business in the

presence of anyone outside the company.  As to calls he received regarding the

business of Comsys, Enterline's general practice was not to discuss company

business with others present and to tell a caller that he would have to call them back later, or he would speak very cryptically, or excuse himself to take the call outside of the presence of others.

F.    Schvacho's Investment History

Schvacho had three brokerage accounts during the Period.  He had a trading account with Brown & Company (a company ultimately acquired by E*Trade). Schvacho also had an individual retirement account with E*Trade (collectively, the "E*Trade Accounts").  An account with Charles Schwab was used by Schvacho's employer to transfer stock options as part of Schvacho's compensation.  Finally, Schvacho had a 401(k) retirement account at Chase Bank.

In 2008, Schvacho sold all of his publicly-traded securities, including Comsys stock, because he had lost confidence in the stock market and had doubts about the overall condition of the economy.

Scvhacho's investment strategy changed after his retirement from Cisco in the fall of 2009.  Schvacho had significantly greater financial resources available to him in late 2009 and early 2010 than in earlier years.  In 2009, Schvacho reported income of $658,432, whereas in 2008 his income was $120,769.  The increase in 2009 income was a result of Schvacho's receipt of his Cisco retirement package, proceeds

from the dissolution of SMI, and sales of stock options in his Charles Schwab account.

Schvacho discovered that it was possible to actively trade with a portion of his 401(k) retirement account with Chase Bank, and opened a self-directed brokerage account at Chase on or about January 22, 2010. Schvacho transferred $500,000 from the Chase retirement account to the Chase brokerage account. At this time, Schvacho had significantly more time to devote to investing and he considered investing his full-time job.

Schvacho testified that he believed the most profitable approach to investing was to acquire a large block of a particular stock and hold it for a period of time. Schvacho evaluated several factors when determining which stock to select. He looked at market segments, specific companies in that market segment, their positioning relative to competitors in the segment, the quality of their products, their management, and various financial metrics.

Schvacho decided to focus on the staffing industry and Comsys in particular because he had become familiar with the staffing industry generally based on conversations with Enterline. Schvacho learned that staffing companies were an excellent indicator of future economic growth. He understood staffing companies would see an impending recession before other industries due to decreased demand

for labor.  Schvacho further believed that in coming out of a recession, such as in the 2009 time period, staffing companies that provided lower skilled workers experienced an increase in demand before staffing companies, like Comsys, that provided skilled professionals to the technology sector.

G.    Schvacho's Trading in Comsys Stock from 2001 to 2008

Schvacho regularly traded Comsys stock from February 2001 through January 2008.  He first became interested in Comsys because Enterline was the CEO and he had confidence in Enterline's managerial skills.

Prior to 2009, Schvacho purchased shares of Venturi or Comsys stock valued at more than $100,000 during the following three time periods: (1) from October 9, 2003 through December 30, 2003; (2) from December 15, 2006, to January 17, 2007; and (3) from July 24, 2007, through July 30, 2007.

Schvacho did not tell Enterline of his trading in Comsys stock because he valued his friendship with him and did not want to jeopardize the relationship. Schvacho believed their friendship would be strained if Schvacho incurred a substantial loss from his Comsys trading activity because Enterline might feel responsible for Schvacho's losses.

H.    Schvacho's Trading in Comsys Stock in the Period Leading Up to its
      Acquisition by Manpower

At 2:41 p.m. on October 28, 2009, over one week before the SEC alleges

Schvacho's insider trading began, Schvacho purchased 1,000 shares of Comsys

stock at a total cost of $6,822.69.  Also on October 28, 2009, Comsys filed its 8-K,

containing a press release announcing its announcing its financial results for the

third quarter ended September 27, 2009.  The release reported that revenue

decreased compared to the third quarter of 2008, but increased compared to the

second quarter of 2009.

The following day, on October 29, 2009, Comsys' stock opened at $7.25 per

share, but traded as low as $6.76 per share later in the day.  At 11:54 a.m., Schvacho

sold 500 shares at $6.87 per share.  At 12:31 p.m., he sold the remaining 500 shares

he purchased the day before at $6.94 per share.  Schvacho's proceeds from the sales

totaled $6,905.  Schvacho testified that he "panicked" when the intra-day price

decreased, causing him to sell all of the shares he purchased the previous day.

On November 6, 2009, Enterline had a telephone conversation with

Manpower's CFO, who advised that Manpower was interested in acquiring a

company in the professional staffing sector and that, while Comsys was

Manpower's preferred acquisition, Manpower was prepared to target another

company for acquisition if it could not strike an agreement to acquire Comsys.

— 10 —

Manpower's CFO stated that Manpower was willing to pay a fair price for Comsys, but was unwilling to aggressively set a per share acquisition price just to assure a deal.  Manpower's CFO acknowledged there remained a significant valuation gap between Manpower's valuation of Comsys at $15.00 per share and Comsys' valuation.  Enterline told Manpower's CFO he would get back to him after Comsys' quarterly board meeting on November 11, 2009.

On November 6, 2009, Enterline and Schvacho had dinner at SABistro, a restaurant in Buford, Georgia.  During the evening, Schvacho made a payment with his credit card to the restaurant in the amount of $24.20.  Records show that Enterline made a credit card payment to the restaurant at 8:53 p.m. in the amount of $189.48.  Earlier that day, telephone records show a call between Schvacho and Enterline on four occasions between 5:48 p.m. and 6:30 p.m., with the longest call recorded as lasting four minutes.  The content of the calls is unknown.

At 7:31 p.m. on November 6, 2009, Enterline placed a call to David Kerr ("Kerr"), Comsys' Senior VP of Business Development that was recorded as lasting for 9 minutes.  Enterline testified that he did not, at dinner on November 6, 2009, or at any other time, tell Schvacho about Manpower's expression of interest in discussing a possible acquisition of Comsys and he testified that Schvacho did not overhear him discussing this interest with anyone else.

On November 7, 2009, Enterline called Schvacho at 3:29 p.m. The call was recorded as lasting for 6 minutes. The content of the call is unknown.

Two days later, on November 9, 2009, Schvacho purchased 4,100 shares of Comsys stock, at a total cost of $30,924.37.

On November 9, 2009, records show a call from Enterline to Schvacho at 7:09 p.m. The call was recorded as lasting for 11 minutes. The content of the call is unknown.

The next day, on November 10, 2009, Schvacho purchased 1,900 shares of Comsys stock for $14,489.70.

On November 11, 2009, Comsys held its regular quarterly board meeting. Manpower's interest in discussing an acquisition of Comsys was a major focus of the meeting. As a result of the discussion, the Board directed Comsys management to (1) pursue a possible transaction with Manpower, subject to agreement on a satisfactory valuation of Comsys stock, (2) engage Baird, a financial consultant, to assist Comsys with an agreement by Manpower, or any other similar transaction that might result from their negotiation with Manpower, and (3) in their discussion to inform Manpower that the minimum consideration the Board would consider to pursue such a transaction with Manpower was a price for Comsys stock in the range of $17.00 to $20.00 per share.

On November 11, 2009, Schvacho purchased 1,400 shares of Comsys stock for $10,860.00.  At 5:31 p.m., Enterline sent a text message to Schvacho.  Records show that at 9:31 p.m., Schvacho called Enterline.  The call was recorded as lasting for 7 minutes.  The content of the text message and the call is unknown.

On November 12, 2009, Enterline called Manpower's CFO, advised him that $17.00 to $20.00 per share was the valuation range set by Comsys' board, and that Manpower ought to be able to get to that range with additional due diligence.  Manpower's CFO expressed a willingness to proceed with negotiations.

On November 12, 2009, Schvacho purchased 5,500 shares of Comsys stock for $46,349.50.

On November 13, 2009, records show a call from Enterline to Schvacho at 2:47 p.m.  The call was recorded as lasting 6 minutes.  The content of the call is unknown.  Sometime on November 13, 2009, Schvacho purchased 400 shares of Comsys stock for $3,050.  The time of the purchase is unknown.

On November 14, 2009, Schvacho called Enterline at 8:30 a.m. and 8:31 a.m.  Each call was recorded as lasting one minute.[2]  On November 15, 2009, Enterline called Schvacho at 2:31 p.m. and 2:32 p.m.  Each call was recorded as lasting one

---

[2] The evidence was that a caller is charged one minute for a call even if the call only triggers the recipient instrument's voicemail.  Thus, a record of a one minute call is not evidence of an actual exchange of information between the parties.

minute.  Schvacho called Enterline at 3:25, and the call was recorded as lasting one minute.  Enterline called Schvacho at 4:14 p.m. and 4:15 p.m.  Again, each call was recorded as lasting one minute.  The content, if any, of these calls is unknown.

On November 17, 2009, Comsys entered into an engagement letter with Baird for Baird's financial advisory services in connection with a possible merger or sale of Comsys.  The final draft of the Baird engagement letter was circulated to Enterline by email at 10:00 a.m.

At 11:56 a.m., Enterline called Schvacho.  The call was recorded as lasting 5 minutes.  The content of the call is unknown.  Also on November 17, 2009, Schvacho purchased 3,600 shares of Comsys stock for $29,903.90.  At 7:41 p.m. on November 17, 2009, Enterline sent Schvacho a text message.  The content of the call is unknown.

On November 18, 2009, Schvacho purchased 700 shares of Comsys stock for $5,926.00.

On November 19, 2009, Manpower and Comsys entered into a confidentiality agreement.  On November 19 and 20, 2009, representatives of Comsys met with representatives of Manpower at Baird's offices in Milwaukee.  At some point on November 19, 2009, Schvacho purchased 3,400 shares of Comsys stock for $20,174.90.  At 6:39 p.m. on November 19, 2009, Schvacho called Enterline.  The

call was recorded as lasting 3 minutes.  At 6:55 p.m., Enterline called Schvacho.

The call was recorded as lasting 7 minutes.  The content of these calls is unknown.

Schvacho did not execute any trades on Friday, November 20, 2009.  That evening,

Enterline called Schvacho at 7:30 p.m. and the call was recorded as lasting 19

minutes.  The content of the call is unknown.

Between November 9, 2009, and November 19, 2009, Schvacho purchased a

total of 20,000 shares of Comsys stock.  Comsys' stock price increased consistently

throughout that period.  On November 9, 2009, Schvacho purchased stock in

Comsys at a price as low as $7.31 per share.  On November 19, 2009, Comsys' stock

hit an intraday high price of $8.48 per share.

Schvacho did not trade in Comsys stock between November 19, 2009, and

December 16, 2009.  During this period, Schvacho and Enterline continued to speak

on the phone frequently.  Phone records show short calls between Schvacho and

Enterline, including calls recorded as lasting one minute, on November 22,

November 24, November 25, November 26, November 27, November 29,

December 4, December 5, December 6, December 8, December 9, December 10,

December 11, December 12, and December 15.  The content of these calls is

unknown.  During this period, Schvacho did not make any trades in Comsys stock.

a. *Schvacho and Enterline's Sailing Trip to Florida*

On December 12, 2009, Enterline and Schvacho drove in Enterline's car from Atlanta to St. Petersburg, Florida, to sail Enterline's sailboat from St. Petersburg to Fort Myers, Florida. Schvacho and Enterline departed St. Petersburg on December 13th and arrived in Fort Myers the next day, December 14th.

Enterline had a briefcase with him on the sailboat that he stowed away in the forward stateroom, where he slept. The briefcase did not have a lock. Enterline does not recall having in the briefcase any documents regarding the transaction with Manpower or other information about Comsys. Enterline also had with him on the boat a Blackberry device that was not password protected. Enterline testified that he had no reason to believe that Schvacho might have gone through his briefcase or accessed his Blackberry during their overnight trip on the boat.

On December 14, 2009, Manpower's CEO contacted Baird and stated that Manpower was prepared to move forward with a possible acquisition of Comsys at a valuation of $17.50 per share of Comsys stock, with the consideration consisting of 50% cash and 50% Manpower stock. Enterline testified that he did not tell Schvacho about this development, and that he did not discuss it in his presence.

On December 15, 2009, David Stamford, a friend of Enterline's, drove Schvacho and Enterline from Fort Myers back to St. Petersburg. Stamford's

girlfriend was present during the drive to St. Petersburg.  Enterline placed several telephone calls to other Comsys employees on December 15th.

After arriving in St. Petersburg, Schvacho drove Enterline's car back to Atlanta.  Enterline returned to Atlanta by plane.  While Schvacho was driving Enterline's car to Atlanta, Schvacho called Enterline at 5:49 p.m.  The call was recorded as lasting for 29 minutes.  The content of the call is unknown.  Enterline sent Schvacho a text message at 7:00 p.m.  The content of the text is also unknown. At some unknown time on December 15, 2009, Kerr emailed Enterline a Confidentiality Agreement that Comsys entered into with Kforce, another interested merger party.

On December 16, 2009, Enterline called Schvacho at 7:56 a.m.  The call was recorded as lasting 7 minutes.  The content of the call is unknown.

### b. *Comsys and Manpower Move Forward with the Acquisition*

On December 16, 2009, Enterline flew from St. Petersburg to Charlotte for a meeting of Comsys' executive and compensation committee.  He landed in Charlotte at approximately 12:30 p.m.  The full Comsys board met by telephone following the executive and compensation committee meeting.  Management reported on the Manpower proposal and Enterline reported on his scheduled dinner with Kforce's CEO.  The board directed management to (1) seek an increase in the

consideration offered by Manpower without jeopardizing the transaction, but with the goal of obtaining Manpower's best and final offer; and (2) determine as quickly as possible whether Kforce's interest in a merger was sufficient to be considered, understanding that doing so could jeopardize the transaction with Manpower.

On December 16, 2009, Schvacho purchased 1,800 shares of Comsys stock for $15,120.00.  On December 17, 2009, Schvacho purchased 1,200 shares of Comsys stock for $10,098.00.

On December 17, 2009, Enterline called Kforce's CEO to confirm their dinner plans.  During the conversation, Enterline informed Kforce's CEO that other strategic discussions they were having made it imperative that Kforce be prepared to move quickly and decisively in any negotiations with Comsys.  Kforce's CEO responded that, because of Comsys' other discussions, Kforce elected not to pursue its discussions with Comsys.

c. *Schvacho Picks Up Enterline at the Atlanta Airport*

On December 18, 2009, Enterline's assistant emailed Schvacho to inform him that Enterline would arrive in Atlanta the following morning at 8:46 a.m.  That same day, Enterline called Schvacho.  The call was recorded as lasting for 4 minutes.  The content of the call is unknown.

On December 19, 2009, Schvacho drove Enterline's car to pick Enterline up at Hartsfield-Jackson International Airport in Atlanta.  The flight arrived early. Enterline's phone records show that Enterline sent Schvacho a text message at 8:27 a.m.  Schvacho called Enterline at 8:51 a.m.  The call was recorded as lasting 1 minute.  The content of the email and call is unknown.  Enterline drove Schvacho to Schvacho's house in Lilburn, Georgia.

At 9:33 a.m. on December 19, 2009, Enterline called Kenneth Bramlett ("Bramlett"), Comsys' general counsel.  The call was recorded as lasting 23 minutes.  The content of the call is unknown.

### d.  *Comsys and Manpower Complete the Acquisition*

On December 21, 2009, Manpower's CFO contacted Baird to state that Manpower was willing to increase its valuation of Comsys stock to $17.65 per share. Manpower's CFO advised that this was Manpower's "best and final offer."  On December 21, 2009, Schvacho purchased 2,600 shares of Comsys stock for $22,648.00.

On December 22, 2009, Schvacho purchased 1,500 shares of Comsys stock for $13,584.95.  At 7:25 p.m. on December 22, 2009, Schvacho called Enterline. The call was recorded as lasting for 6 minutes.  The content of the call is unknown.

On December 23, 2009, Enterline received an email at 6:01 a.m. with presentation materials for a conference call of the Comsys board scheduled for that day.  During the call, the board unanimously agreed to move forward with the transaction with Manpower.  At 9:57 a.m. on December 23, 2009, Enterline called Schvacho.  The call was recorded as lasting for 9 minutes.  The content of the call is unknown.  On December 23, 2009, Schvacho purchased 2,200 shares of Comsys stock for $19,882.75.  At 7:37 p.m. on December 23, 2009, Enterline called Schvacho.  The call was recorded as lasting for 8 minutes, and the content of the call is unknown.  At 7:49 p.m., Enterline called Schvacho.  The call was recorded as lasting for 7 minutes.  The content of the call is unknown.

On December 24, 2009, Baird sent to Manpower, on behalf of Comsys, a proposed term sheet outlining the proposed terms of the transaction between Comsys and Manpower.

Schvacho and Enterline communicated on all but one day between December 25, 2009, and January 1, 2010.  Phone records show that on December 25, Schvacho called Enterline twice and Enterline called Schvacho once and sent him one text message; on December 26, Schvacho sent Enterline one text message; on December 27, Enterline sent Schvacho one text message; and on December 28, each sent the

other one text message and Enterline called Schvacho.  The content of the text messages and calls is unknown.

On December 29, 2009, Enterline called Schvacho at 6:38 p.m.  The call was recorded as lasting 18 minutes.  The content of the call is unknown.  On December 30, 2009, at 3:27 p.m., Schvacho purchased 500 shares of Comsys stock for $4,490.00.  Also on December 30, 2009, Enterline called Schvacho at 4:12 p.m.  The call was recorded as lasting 12 minutes.  The content of the call is unknown.

On December 31, 2009, Schvacho purchased 2,000 shares of Comsys stock for $22,539.90.

On January 1, 2010, Enterline called Schvacho at 10:56 a.m.  The call was recorded as lasting for 5 minutes.  The content of the call is unknown.  On January 5, 2010, Enterline called Schvacho at 7:39 a.m.  The call was recorded as lasting for 9 minutes.  The content of the call is unknown.  On January 5, 2010, Schvacho purchased 5,500 shares of Comsys stock for $51,622.75.

On January 5, 2010 at 3:45 p.m., Comsys received a revised term sheet from Manpower.

On January 6, 2010, Enterline called Schvacho at 8:36 a.m.  The call was recorded as lasting for 3 minutes.  The content of the call is unknown.  On January 6, 2010, Schvacho purchased 3,700 shares of Comsys stock for $33,785.00.  At 10:30

a.m. on January 6, 2010, Comsys' board met by telephone and authorized Comsys to move forward with the transaction in accordance with the terms set forth in the term sheet received the previous day.  The Board directed management and Baird to conduct appropriate due diligence of Manpower.  After the market closed on January 6, 2010, Comsys issued its pre-announcement revising its projection for the fourth quarter of 2009, to reflect improved revenues and earnings.  The closing price for Comsys' stock on January 6th was $9.14 per share.  Following the announcement, the price increased to $11.00 per share when trading opened on January 7th.

Schvacho and Enterline continued to speak frequently during the period between January 7 to 19, 2010.  Phone records show that Enterline called Schvacho on January 7, January 11, January 13, twice on January 16, and twice on January 19. The content of these calls is unknown.  Schvacho did not trade in Comsys stock during this period.

On January 20, 2010, Schvacho purchased 8,800 shares of Comsys stock for $113,284.00.

On January 22, 2010, Schvacho called Enterline at 3:35 p.m.  The call was recorded as lasting for 3 minutes.  At 7:05 p.m., Enterline called Schvacho and the call was recorded as lasting for 9 minutes.  At 7:15 p.m., Enterline call Schvacho and the call was recorded as lasting for 2 minutes.  On January 23, 2010, Enterline called

Schvacho at 10:49 a.m. and the call was recorded as lasting for 26 minutes.  On January 24, 2010, Enterline called Schvacho at 2:46 p.m. and Schvacho called Enterline at 3:41 pm.  Both calls were recorded as lasting one minute.  The content of these calls is unknown.

On January 25, 2010, Schvacho purchased 500 shares of Comsys stock at the price of $12.40 per share for a total cost of $6,200.00.  Also on January 25, 2010, Enterline called Schvacho at 5:46 p.m. and the call was recorded as lasting for 1 minute.  At 9:04 p.m., Enterline called Schvacho and the call was recorded as lasting for 11 minutes.  The content of these calls is unknown.

On January 26, 2010, Schvacho purchased 2,634 shares of Comsys stock for $33,319.68.

On January 27, 2010, Schvacho called Enterline at 9:42 a.m.  The call was recorded as lasting for 8 minutes.  The content of the call is unknown.

On January 28, 2010, at 7:30 p.m., Comsys' board met by telephone for an update on the progress of the proposed transaction with Manpower.  Comsys management and Baird reported that Manpower had completed its due diligence and was prepared to move forward at the price it proposed.

On January 29, 2010, Enterline called Schvacho at 8:11 a.m. and the call was recorded as lasting for 1 minute.  Enterline called Schvacho again at 8:12 a.m.  The

call was recorded as lasting for 15 minutes.  At 9:02 a.m., Schvacho called Enterline and the call was recorded as lasting for 1 minute.  Schvacho called Enterline at 9:03 a.m. at a different phone number.  The call was recorded as lasting for 3 minutes. The content of these calls is unknown.  Also on January 29, 2010, Schvacho purchased 10,000 shares of Comsys stock for $127,541.40.

On January 31, 2010, Schvacho and Enterline communicated multiple times. Enterline called Schvacho at 9:13 a.m. and the call was recorded as lasting for 14 minutes.  At 5:04 p.m. and at 6:24 p.m., Enterline called Schvacho, with each call recorded as lasting for 1 minute.  At 9:00 p.m., Schvacho called Enterline and the call also was recorded as lasting for 1 minute.  At 9:02 p.m., Schvacho called Enterline at a different phone number and the call was recorded as lasting for 7 minutes.  The content of these calls is unknown.

During the evening of January 31, 2010, Comsys' board met by telephone for an update on the proposed transaction, including the negotiation of the merger agreement.  Counsel advised the board that negotiation and preparation of the merger agreement should be substantially completed in time for its presentation to the board at its meeting scheduled for the following day.

On February 1, 2010, Schvacho purchased 8,775 shares of Comsys stock for $115,243.50.  The Comsys board met as scheduled on February 1, 2010, to consider

the near-final draft of the merger agreement and to receive Baird's opinion as to the financial fairness of the transaction.  The board unanimously approved the merger and recommended that Comsys' stockholders adopt the merger agreement and its terms.  The merger agreement was executed by Comsys and Manpower on the evening of February 1, 2010.  The transaction was publicly announced the morning of February 2, 2010.

On February 2, 2010, Enterline called Schvacho at 9:40 a.m.  The call was recorded as lasting for 1 minute.  At 11:14 a.m., Schvacho called Enterline and the call was recorded as lasting for 1 minute.  The content of these calls is unknown.  On February 2, 2010, Schvacho sold 35,813 shares of Comsys stock, representing half of his Comsys holdings, for total proceeds of $626,144.04.

Schvacho had a notebook that he principally used to record trading activity in Comsys stock.  In the middle of the pages reflecting Schvacho's tracking of Comsys market activity is a page that relates primarily to a race that Schvacho helped organize for an arthritis charity.  The race took place on December 12, 2009.  The page before the arthritis race page tracks Comsys market activity on November 19 and November 20, 2009.  The page after the arthritis race page tracks Comsys market activity beginning about a month later, on December 16, 2009, and some period thereafter. The arthritis race page contains a number of calculations Schvacho

made to figure out the length of the race course.  Those calculations involve numbers expressed in the hundreds and thousands.  None of them include a decimal point. Near the bottom of the page, in the left-hand margin, the number 17.50 is written and circled.  That number does not appear to relate to the calculations shown on the rest of the page.  Given the placement of the page in the notepad, it is possible that the circled number 17.50 was written sometime in December but before Schvacho began recording trades on December 16th.

Schvacho does not remember why he had written and circled "17.50" on his notepad or what the number represented.  On the page of the notebook on which Schvacho calculated his profits—which appears several pages after the page on which Schvacho wrote the figure "17.50"—Schvacho used "$17.48" per share to calculate his profits.  The opening price of the stock the day the merger was announced was $17.48.   There are a number of blank pages at the end of the notebook, and there was available blank space on the page on which he calculated his profits and on the page where he tallied the number of shares he had bought.

I.    Enterline Did Not Intentionally Provide Schvacho Inside Information Regarding Comsys

The Court evaluated the credibility of Enterline's testimony and found the testimony, and the manner in which it was presented at trial, to be credible and believable.  The Court finds that Enterline did not intentionally provide Schvacho

with inside information regarding the acquisition of Comsys by Manpower or any other Comsys confidential information and took steps to assure that he did not discuss Comsys business, and especially Comsys's discussions with Manpower, in Schvacho's or another person's presence.

J.     Enterline Lacked Knowledge of Schvacho's Trading in Comsys

Schvacho did not tell Enterline, and Enterline did not know, that Schvacho had purchased stock in Comsys during the nine years Schvacho traded stock in Comsys, including during the period immediately preceding Manpower's acquisition of Comsys.  Schvacho stated he did not tell Enterline he was trading Comsys stock because he valued his friendship with Enterline and did not want to jeopardize the relationship.  Schvacho actively traded in Comsys stock over many years, including before the time the SEC alleges he used inside information.  The trades made before the period of alleged use of inside information were significant, including trades made between October 9, 2003, and July 30, 2007, that were valued at over $100,000.

Enterline first learned in June 2010 that Schvacho had purchased stock in Comsys, after Enterline had been contacted by FINRA as part of its investigation relating into trading of Comsys stock prior to the Manpower acquisition.

Enterline testified he felt betrayed when he learned that Schvacho had traded in the stock of his company.  Enterline was concerned about the appearance of impropriety associated with Schvacho's trades and his personal reputation as the CEO of a public company.  At the time of trial, the relationship between Enterline and Schvacho was significantly estranged.

K.    Additional Findings of Fact

The SEC admits that any inside information that Schvacho might have had about Comsys came from Enterline.  That is, the SEC admits Enterline was the sole possible source of any alleged inside information obtained by Schvacho.  The Court finds Enterline never intentionally provided inside information about Comsys to Schvacho.  Enterline repeatedly and consistently denied ever having discussed inside information about Comsys with Schvacho or in his presence.  The Court credits and accepts Enterline's testimony in this regard as true.

The SEC does not have any evidence of the actual communications between Schvacho and Enterline between November 6, 2009, and February 2, 2010.  The SEC does not have any direct evidence of the content of any communications between Enterline and other Comsys executives that it alleges Schvacho may have overheard between November 6, 2009, and February 2, 2010.  The SEC does not have any direct evidence that Schvacho was in the presence of Enterline while

Enterline had a telephone or other conversation in which inside information was discussed with anyone, including other Comsys employees.  The SEC did not offer any record of the content of any text messages between Enterline and Schvacho.  The SEC admits that its proof of the insider trading is based on circumstantial evidence based on Schvacho's trading activity, phone and text message records, the fact that Enterline and Schvacho dined together at a restaurant on November 6, 2009, and were together from December 12-14, 2010, in connection with the transport of Enterline's sailboat from St. Petersburg to Ft. Myers, Florida, and the note written in the notebook that Schvacho used principally to track market activity in Comsys stock during the period of November 9 or 10, 2009, through February 1, 2010.

## II.    CONCLUSIONS OF LAW

The SEC alleges that Schvacho violated Sections 10(b) and 14(e) of the Exchange Act and Rules 10b-5 and 14e-3 promulgated by the SEC thereunder.  The SEC seeks injunctive relief against Schvacho to prohibit Schvacho from violating Sections 10(b) and 14(e) of the Exchange Act, to disgorge Schvacho of gains in the amount of $512,667.86, plus prejudgment interest, and the imposition of civil penalties pursuant to Sections 21(d)(3) and 21A of the Exchange Act.

A.   <u>Liability for Violating Section 10(b) and Rule 10b-5</u>

a. *Elements*

The SEC alleges that Schvacho violated Section 10(b) of the Exchange Act and Rule 10b-5.  (Compl. at ¶¶ 57-65; Pretrial Order at 20.)  Section 10(b) of the Exchange Act and Rule 10b-5 make it unlawful for a person to employ any device, scheme, or artifice to defraud someone else in connection with the purchase or sale of a security.  15 U.S.C. § 78(j)(b); 17 C.F.R. § 240-10b-5.

To prove that Schvacho engaged in insider trading in violation of Section 10(b) of the Exchange Act and Rule 10b-5, the SEC must prove by a preponderance of the evidence each of the following three elements:  First, that Schvacho used an instrumentality of interstate commerce in connection with the purchase or sale of a security.  <u>Id.</u>  Second, that Schvacho used a device, scheme, or artifice to defraud in connection with the purchase or sale of a security.  <u>Id.</u>  Third, that Schvacho acted with scienter, that is he acted knowingly or with severe recklessness.  <u>Id.</u>  <u>Cf.</u> <u>Aaron v. SEC</u>, 446 U.S. 680, 686 n.5 (1980).

The SEC alleges that Schvacho engaged in "insider trading."  A person may engage in insider trading when he purchases or sells a security on the basis of material, nonpublic information in breach of a duty of trust or confidence owed direct, indirectly, or derivatively to the corporation that issued the security, to the

corporation's shareholders, or to the information's source.

The SEC specifically relies in this action on a misappropriation theory of insider trading. Insider trading may occur when a person misappropriates material, confidential information and then trades securities on the basis of that information. See United States v. O'Hagan, 521 U.S. 642, 652 n.23 (1997). Cf. 17 C.F.R. § 240.10b5-2. This breaches the duties of confidentiality and loyalty that the person owes to the source of the information. Id. The person's use of the confidential information defrauds the source of the exclusive use of that information. Id. Here, SEC alleges misappropriation by Schvacho's violation of a duty of confidentiality and loyalty owed to Enterline.

To prove misappropriation, the SEC must show, by a preponderance of the evidence, that Schvacho misappropriated inside information from Enterline, that Schvacho owed Enterline a duty of confidentiality, and that Schvacho used the inside information to trade Comsys shares. Id. The SEC acknowledges that it does not have any direct evidence of misappropriation of insider information and instead relies only on circumstantial evidence of misappropriation generally based on various telephone calls that Schvacho had with Enterline, text messages sent between them, and that they were in the presence of each other at a dinner, during a drive to Florida and to the airport, and on a sailing trip. It also relies on trades in

Comsys stock Schvacho made in temporal proximity to the time periods when Schvacho and Enterline communicated or were together and on the "17.50" entry in Schvacho's notebook.  Finally, the SEC relies on the evidence of the timing of discussions between Comsys and Manpower and Enterline's participation in them. See SEC v. Ginsburg, 362 F.3d 1292, 1298 (11th Cir.2004) ("The SEC must prove violations of § 10(b) . . . by a preponderance of the evidence, and may use direct or circumstantial evidence to do so."); SEC v. Steffes, 805 F. Supp. 2d 601, 614-15 (N.D. Ill. 2011); SEC v. Michel, 521 F. Supp. 2d 795, 822-25 (N.D. Ill. 2007).

The parties do not dispute that the SEC has satisfied its burden of proof with respect to the first element required to prove a Section 10(b) violation, agreeing that Schvacho used an instrumentality of interstate commerce in connection with the purchase of Comsys stock.  The parties do dispute that the SEC has proved the second and third elements of a Section 10(b) violation.

> b. *The SEC Failed to Satisfy its Burden of Proof that Schvacho*
> *Possessed Material, Nonpublic Information About Comsys.*

The Court finds that the circumstantial evidence that the SEC offered at trial is insufficient to prove, by a preponderance of the evidence, that Schvacho possessed material, nonpublic information about Comsys and used such information to trade in Comsys stock with scienter.  The SEC's case is based on the litigation theory that Schvacho traded in Comsys stock using his access to material, nonpublic

information he obtained from Enterline and that such access violated a duty of confidentiality that Schvacho owed to Enterline.[3]  "Potential 'access' [however] to material, nonpublic information, without more, in insufficient to prove [the defendant] actually possessed such information."  SEC v. Rorech, 720 F. Supp. 2d 367, 410 (S.D.N.Y. 2010); see also SEC v. Horn, No. 10-cv-955, 2010 WL 5370988, at *6 to *7 (N.D. Ill. Dec. 16, 2010) (granting summary judgment to defendant where SEC failed to demonstrate what specific information was in defendant's possession).  It is this proof failure that precludes the Court from finding for the Plaintiff.

The SEC offers two evidentiary theories to support its misappropriation claim:  (1) that Enterline confided to Schvacho material, non-public information about Comsys and its business plan, specifically Comsys' merger and acquisition plans; or (2) that Schvacho obtained material, non-public information from Enterline

---

[3] A duty of confidentiality is owed for the purposes of Section 10(b) and Rule 10b-5 when "a person agrees to maintain information in confidence" or when "the person communicating the material nonpublic information and the person to whom it is communicated have a history, pattern, or practice of sharing confidences, such that the recipient of the information knows or reasonably should know that the person communicating the material nonpublic information expects that the recipient will maintain its confidentiality."  17 C.F.R. § 240.10b5-2(b).  See also United States v. O'Hagan, 521 U.S. 642, 652 n.23 (1997).  Even if Schvacho owed a duty of confidentiality to Enterline, the Court concludes the SEC has not proved by a preponderance of the evidence that any disclosure of inside information occurred or that Schvacho used it to trade in Comsys stock.

indirectly by, for example, overhearing Enterline's communications with third parties or by accessing confidential information about the potential acquisition that Enterline may have left in a briefcase on the sailboat Schvacho and Enterline transported from St. Petersburg to Ft. Myers, Florida.

The SEC contends that Enterline intentionally or carelessly revealed inside information to Schvacho, but trusted that Schvacho would not trade using it.  The SEC's evidence at trial largely focused on records of times of telephone calls and text messages between Schvacho and Enterline during the period 2001 through February 2010, with particular focus on the period October 2009 through February 2010, and the purchase and sale of Comsys stock during these periods.  The SEC juxtaposes the stock purchases and sales with these phone calls, arguing that a "pattern" exists between conversations and stock transactions that shows, circumstantially, that Schvacho had engaged in trading activity using inside information, the source of which was Enterline.  While facially interesting, this pattern and the other evidence upon which the SEC relies does not prove, by a preponderance of the evidence, that Schvacho misappropriated insider information to make the trades alleged by the SEC.

The SEC selects an interpretation of the evidence that ignores other interpretations that discredit the SEC's misappropriation theory in this matter.  The

SEC and Schvacho presented significant evidence of a long and close relationship

between Enterline and Schvacho.   Included in the evidence presented was the

unrebutted testimony that they spoke by phone and visited in person with unusual

frequency.[4]  The SEC presents certain of these communications that occurred in

close proximity to Schvacho's trades in Comsys shares to claim this temporal

evidence supports that Enterline either intentionally or inadvertently passed along

inside information that Schvacho misappropriated.  While this timing is interesting it

is not persuasive and does not meet the SEC's burden of proof in this case.  The

evidence was that Enterline and Schvacho spoke with each other with enormous

frequently about matters that Enterline and Schvacho acknowledged concerned

mainly their personal relationship and sometimes about the common business

venture in which they were involved, but which is not at issue in this litigation.  The

SEC's suggestion that each of the conversations they referenced was followed by a

trade in Comsys stock, and thus the communication must have included inside

information, is not supported by the evidence directly or circumstantially and is not

supported by a practical interpretation of the evidence.  The SEC contends Schvacho

_____

[4] The SEC did not present any evidence, including phone records, to show that the
frequency or pattern of communication and the times when Enterline and Schvacho
were together was any different during the period when the SEC contends that
insider information was misappropriated by Schvacho than it was before the insider
trading allegedly began.

overheard calls between Enterline and Comsys personnel on two separate occasions: (1) during the dinner at SABistro on November 6, 2009 and (2) when Schvacho picked up Enterline at Atlanta Hartsfield-Jackson International Airport on December 19, 2009.  On November 6, 2009, Enterline and Schvacho had dinner at SABistro. The dinner concluded at approximately 8:53 p.m., which is the time Enterline made a payment on his credit card in the amount of $189.48.  Enterline placed two calls that evening, one at 7:31 p.m. to Kerr, which was recorded as lasting 9 minutes, and a second at 7:47 p.m. to a blocked number, which was recorded as lasting 5 minutes.  There is no evidence that the second call at 7:47 involved Comsys business.

The SEC failed to present any evidence regarding the time that Schvacho and Enterline first met at SABistro or that Enterline placed the calls at the dinner table[5] as opposed to excusing himself, as was his general practice when discussing business matters.  There is not any basis to conclude that either of the two calls in question occurred in Schvacho's presence and the evidence is further that Enterline placed both calls.  The Court finds implausible the SEC's suggestion that Enterline, in the presence of Schvacho and others, would have placed a call to discuss

---

[5] The SEC did not call as a witness any other person who attended this dinner to support that Enterline had discussions in the earshot of others about Comsys business or the potential merger.

confidential information regarding a potential merger.  The Court concludes that Schvacho did not obtain inside information by overhearing Enterline's telephone calls on November 6, 2009.

Regarding the December 19, 2009, event when Schvacho drove Enterline home from the airport, there is nothing to support that they discussed anything regarding Comsys during this short trip and the SEC's conclusion that insider information was shared is based on the fact that they were together and that, two days later Schvacho purchased Comsys shares.  Considering this evidence individually and in the aggregate with other evidence presented, the Court finds that the SEC has failed to adduce sufficient evidence to meet its burden of proof that Schvacho discussed Comsys business in the presence of Schvacho or others and, in fact, Enterline testified that he would not and did not have such discussions with others or in earshot of them.  There is, at most, scant, unconvincing circumstantial evidence that suggests the unconfirmed possibility that Schvacho obtained material, nonpublic information by overhearing calls between Enterline and other Comsys executives or accessing confidential documents regarding the pending acquisition. That does not meet the SEC's burden of proof in this litigation.

The SEC's interpretation of the evidence is contradicted, convincingly, by the testimony of Enterline.  Enterline, a business professional with an unblemished

history of leadership in the private sector, testified emphatically that he did not and would not disclose proprietary, inside information to Schvacho or any other person to whom such information was not permitted to be disclosed.  Enterline offered his unqualified testimony that he did not disclose inside information to Schvacho and specifically did not disclose to him any information about Comsys's consideration or decision regarding mergers with or acquisitions of or by other companies. Enterline was well-versed in Comsys' policy prohibiting and guarding against the disclosure of inside information.  He knew disclosure of inside information had criminal consequences.  Enterline presented convincing testimony that his business practice was not even to discuss business matters over the phone or in person with people with whom he was allowed to engage in such discussions when others were present.  Enterline testified that when individuals asked him how Comsys was doing, his standard practice was to answer "fine," avoiding the possibility he would inadvertently disclose company information.  Enterline testified that he was vigilant about avoiding conducting any business conversations in the presence of others, and his general practice was to put the call off by telling a caller that he would have to call them back later.  Other times he would either speak cryptically or walk away from the individuals in his presence.  In short, his practice was to avoid conversations about Comsys's business and to defer them until he was able to

discuss such matters outside of the presence of others, including Schvacho.   To accept the SEC's interpretations of the circumstantial evidence upon which the SEC relies, the Court would have to believe that Enterline, over a period of years, intentionally or carelessly passed along sensitive, private and confidential inside information to Schvacho without regard to the serious consequences that would follow if he did.  Enterline, who the Court finds to be a credible witness[6] who offered credible, believable testimony, discredited the SEC's interpretation of the evidence. That Enterline was a credible witness is punctuated by the SEC's examination of Enterline at trial.  The examination did not attack Enterline's specific testimony or his credibility generally.  The SEC did not offer any evidence that Enterline's testimony was other than credible and truthful.

The Court also has considered the evidence that the SEC claims discredit Schvacho's testimony at trial.   The Court specifically considered the claimed inconsistencies in Schvacho's testimony including his testimony about his Comsys investment strategy and his belief that Comsys share value increase would lag behind the performance of non-specialty staffing companies, that he engaged in

---

[6] In finding Enterline to be a credible witness the Court considers his interest in the outcome of this litigation, his recollection of facts and events, his candor, his responsiveness to questions, that he was not impeached by inconsistent statements, and that he no longer is friends with Schvacho.  In short, his testimony was credible and believable.

what the SEC characterized as a "panic" sale of stock in late October 2009, and

Enterline's possession of a briefcase during the mid-December 2009, St. Petersburg

to Ft. Myers, Florida, sailboat transit trip that the SEC contends may have had inside

information about Comsys's discussions with Manpower and a possible

combination of the companies.  That these inconsistencies are not material is

particularly underscored by Enterline's testimony that the briefcase he had did not

have merger business documents in it, that it was stored in his sleeping compartment

at the bow end of the boat in a locker, and that there was no evidence anyone had

accessed it.  This suggests the overreaching, self-serving interpretation that the SEC

imposed on the evidence presented at trial.[7]  That Schvacho may have jumped the

---

[7] The SEC also contends that Schvacho overheard Enterline discussing the potential
merger during their December 11, 2009, through December 14, 2009, trip to Florida.
The SEC failed to produce any evidence that Enterline engaged in phone
conversations in Schvacho's presence during the sailing trip.  Enterline testified that
he did not participate in any telephone calls during the period that he and Schvacho
were sailing from St. Petersburg to Fort Myers.  On December 15, 2009, David
Stamford and his girlfriend drove Schvacho and Enterline from Fort Myers back to
St. Petersburg.  There is no evidence any of the calls Enterline placed to other
Comsys employees on December 15 occurred in Schvacho's presence.

    The evidence also fails to support the SEC's assertion that Schvacho obtained
inside information on December 19, 2009, when Schvacho picked up Enterline from
Atlanta Hartsfield-Jackson International Airport.  Enterline's flight was scheduled
to land at 8:46 a.m., but phone records show that Schvacho placed a call to Enterline
at 8:51 a.m., which is recorded as lasting for 1 minute.  Enterline and Schvacho then
drove to Schvacho's house in Lilburn, Georgia.  At 9:33 a.m., Enterline placed a
23-minute call to Bramlett.  The Court concludes that Schvacho was not in
Enterline's presence during this call.

gun in selling Comsys stock on the basis of an intraday price decrease and that he may have, from time to time, varied from his stated trading philosophy is not sufficient evidence to show that Schvacho testified falsely at trial or to allow the Court to find the SEC met its burden of proof in this case.  Finally, the Court considered the "17.50" entry in Schvacho's notebook.  The Court finds one possible explanation of the "17.50" figure is that it is a rounded valuation of Comsys shares at some point in time prior to the merger, but there is no direct evidence to support this interpretation or when the entry was written and while it is an odd entry and oddly placed in the notebook, its meaning even in the context of all the other evidence in this case is not, alone or in the aggregate with other evidence, sufficient for the Court to find that it aids the SEC in meeting its burden of proof in this case.

Finally, the Court notes the complete absence of any testimony of the content of any conversation or communication between Enterline and Schvacho to support any exchange of inside information to Schvacho.  That the SEC did not present any evidence of any text message upon which it relied at trial is telling since text message content often is available from providers of text messaging services.  Even if it was not, for some reason, available to the SEC in this case, the fact still is there is not any evidence of the content of any communication between Enterline and Schvacho to support any communication of insider information—deliberately or

carelessly—from Enterline and Schvacho and to conclude otherwise would require the Court to improperly speculate that there was.

The Court finds that the evidence does not support the SEC's theory that Schvacho misappropriated inside information by hearing calls from or overhearing calls between Enterline and other Comsys executives or from reviewing confidential Comsys documents in Enterline's possession.

Accordingly, the Court finds and concludes that the SEC failed to meet its burden to prove that Schvacho possessed material, nonpublic information about Comsys during the period between November 6, 2009, and February 2, 2010, and did not purchase or sell Comsys stock using inside information. The SEC has not proved, by a preponderance of the evidence, its claim under Section 10(b) of the Exchange Act and Rule 10b-5.

B.     Schvacho is not Liable for Violating Section 14(e) and Rule 14e-3.

a. *Elements*

The SEC alleges that Schvacho violated Section 14(e) of the Exchange Act and Rule 14e-3. (Compl. at ¶¶ 66-68; Pretrial Order at 20.) Liability under Section 14(e) of the Exchange Act and Rule 14e-3 arises if the following four elements are present:

(a)     If any person has taken a substantial step or steps to commence or has commenced a tender offer and another person is in

> possession of material information relating to such tender offer;
>
> (b)   which information the other person knows or has reason to know is nonpublic;
>
> (c)   which information the other person knows or has reason to know has been acquired directly or indirectly from the offering person, from the issuer of the securities sought or to be sought in such tender offer or from an officer director, partner or employee or any other person acting on behalf of the offering person or issuer; and
>
> (d)   the other person purchases . . . any security to be sought or sought in such tender offer.

Tender Offers, 45 Fed. Reg. 60,410, 60,413 (Sept. 12, 1980).  The SEC must prove each of these elements by a preponderance of the evidence.  SEC v. Garcia, No. 10 CV 5268, 2011 WL 6812680, at *9 n.5 (N.D. Ill. Dec. 28, 2011).

The Court concluded in the context of the SEC's claim under Section 10(b) and Rule 10b-5, that the SEC had failed to prove that Schvacho possessed material, nonpublic information about Comsys.  For these same reasons, SEC's claim under Section 14(e) and Rule 14e-3 has not been proved by a preponderance of the evidence.  See id. at *9 (noting the SEC must prove possession of material, nonpublic information under both charges).

## III.   CONCLUSION

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** that the Clerk of Court enter a verdict and judgment in favor Defendant Ladislav "Larry" Schvacho.

**SO ORDERED** this 7th day of January 2014.

WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE